Judge SULLIVAN
delivered the opinion of the Court.
During the fall of 1997, appellant was tided by a special court-martial composed of officer and enlisted members at Fort Sill, Okla *314 homa. Contrary to his pleas, he was found guilty of breaching the peace, two specifications of assault with a dangerous weapon, a knife, on different soldiers, and wrongfully communicating a threat, in violation of Articles 116, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 916, 928, and 934, respectively. On October 17, 1997, he was sentenced to a bad-conduct discharge, confinement for 6 months, forfeiture of $600.00 pay per month for 3 months, and reduction to pay grade E-l. On February 5, 1998, the convening authority approved this sentence, and on September 16, 1999, the Court of Criminal Appeals affirmed. 51 MJ 605.
On April 12, 2000, this Court granted review on the following issue:
WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FINDING NO PREJUDICE DESPITE FINDING THE MILITARY JUDGE ERRED BY REFUSING TO GIVE A PRESENTENCING INSTRUCTION REGARDING THE INERADICABLE STIGMA OF A PUNITIVE DISCHARGE.
We hold that the military judge erred in refusing to give a defense-requested standard instruction on the “ineradicable stigma” of a punitive discharge without explaining the basis of his decision on the record. See RCM 1005(c), Manual for Courts-Martial, United States (1995 ed.).* Such error, however, was harmless in this case. See United States v. Soriano, 20 MJ 337 (CMA 1985).
The facts in this case which pertain to the granted issue are not disputed. The appellate court below summarized them as follows:
The appellant was convicted of incidents involving two fellow servicemembers. First, the appellant pointed a knife at a soldier and lunged at him after the soldier followed him outside a building to smooth over a previous brief, minor, contentious discussion. Later, he threatened to injure this same soldier in retaliation for the soldier’s reporting the aggravated assault. Second, in an unrelated incident, the appellant attacked a United States Marine Corps trainee, first with his fists, then with a knife, apparently because the appellant was offended by the trainee’s stare. That aggravated assault resulted in a knife wound to the trainee’s temple.
During two brief Article 39(a), UCMJ, sessions held prior to presentation of sentencing evidence, the military judge discussed sentencing instructions, but only to inquire whether the defense counsel desired the instruction explaining unsworn statements. The record contains no other indication of any in-court or out-of-court session concerning sentencing instructions.
During his sentencing instructions, the military judge read the standard bad-conduct discharge instruction:
A bad-conduct discharge. You are instructed that a bad-conduct discharge deprives a soldier of virtually all benefits administered by the Veterans’ Administration and the Army establishment. A bad-conduct discharge is a severe punishment, and may be adjudged for one who, in the discretion of the court, warrants more severe punishment for bad conduct, even though the bad conduct may not constitute commission of serious offenses of a military or civil nature. In this case, if you determine to adjudge a punitive discharge, you may sentence Private Rush to a bad-conduct discharge; no other type of discharge may be ordered in this case.
See Dep’t of Army, Pam. 27-9, Military Judges’ Benchbook 70 (30 Sep. 1996) (currently unchanged at 70.1, Change 1, 30 Jan. 1998) [hereinafter Benchbook]. He did not read any portion of the standard ineradicable stigma instruction.[1] After instructions, the military judge asked whether either counsel wanted additional instructions or objected to those given. The defense counsel replied, “Defense would request the ineradicable stigma instruction, Your Honor.” The military judge answered, “I’m not going to give that in *315 straction, Captain [].” He offered no explanation.
51 MJ at 606-07.
The Court of Criminal Appeals, after a lengthy historical analysis of the ineradicable stigma instruction, held that under the circumstances of the particular case, the military judge’s action was arbitrary, clearly unreasonable, and constituted an abuse of discretion because he inexplicably refused to give the standard sentencing instruction after a timely request without stating any reason for his decision to deviate from the Benchbook. Id. at 610. Nevertheless, it concluded that in light of certain factors delineated in United States v. Soriano, supra, the omission of the instruction did not prejudice appellant as to his sentence.
Our starting point in resolving the granted issue is the opinion of the Court of Criminal Appeals. It exhaustively explored the origins of the standard instruction provided in the Military Judges’ Benchbook on the ineradicable stigma of a punitive discharge. It said in pertinent part:
Because the standard Benchbook instructions are based on a careful analysis of current case law and statute, an individual military judge should not deviate significantly from these instructions without explaining his or her reasons on the record. It is possible that this military judge harbored the belief that a punitive discharge no longer carried a stigma, or that the economic consequences of a discharge were not relevant to the members’ sentencing decision, or that the instruction was not appropriate in this appellant’s case. We cannot divine his reasons from a blank record. Under the circumstances of this case, because the military judge inexplicably refused to give the standard sentencing instruction after a timely request without stating any reason for his decision to deviate from the Benchbook, we find his action to be arbitrary and clearly unreasonable, and thus an abuse of discretion.
51 MJ at 609-10 (footnotes omitted).
We share the lower appellate court’s concern that military members be properly instructed as to the severe nature of a punitive discharge. See United States v. Soriano, 20 MJ at 337. We also agree with the lower appellate court that the military judge has a duty to explain why he is refusing to give a standard instruction requested by the defense. See ROM 1005(c) (“The military judge shall inform the parties of the proposed action on such requests before their closing arguments on sentence.”); see also United States v. Neal, 17 USCMA 363, 365, 38 CMR 161, 163 (1968). In our view, meaningful appellate review of the trial judge’s decision on this important sentencing matter requires that he articulate his reason for his decision. See United States v. Smith, 50 MJ 451, 455 (1999).
The remaining question before us is whether the failure of the trial judge to give the defense requested standard instruction without explanation was harmless error. There was no constitutional error here, but rather a violation of a Manual provision promulgated by the President to ensure a military accused a fair trial. See ROM 1005(c). In this context, we must decide whether this objected to error substantially influenced the sentence proceedings such that it led to a bad-conduct discharge being unfairly imposed in this case. See Art. 59(a), UCMJ, 10 USC § 859(a). We conclude that it did not.
As noted above, the instructions actually given in this case did expressly state to the members that “a bad-conduct discharge is a severe punishment.” (R. 436). See United States v. Soriano, supra at 343. Second, three of the four offenses for which appellant was found guilty were aggravated in nature and individually authorized a punitive discharge. See paras. 110(e) and 54(e)(8), Part *316 IV, Manual, supra. Third, defense counsel conceded to the members that appellant would be otherwise stigmatized, lose benefits, and have his military career terminated by reason of his felony convictions. (R. 431-32). Finally, this case was tried before experienced members (e.g., two colonels, two lieutenant colonels, and three command sergeant majors) who could reasonably be expected to appreciate the severity of this punishment on their own. In these circumstances, as in Soriano, supra, we find no prejudice and affirm.
The decision of the United States Army Court of Criminal Appeals is affirmed.

 The current version of this rule is identical to the one in effect at the time of trial.

 Benchbook at 69:
You are advised that the ineradicable stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that (he)(she) has served honorably. A punitive discharge will affect an accused’s future with regard to (his)(her) legal rights, economic opportunities, and social acceptability.